UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:16-cr-00230-GMN-CWH |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| DEVIN THOMPSON, | |
| Defendant. | |

Presently before the court is defendant Devin Thompson's motion to suppress (ECF No. 289), filed on April 23, 2019.  The government filed a response (ECF No. 305) on June 10, 2019. Thompson filed a reply (ECF No. 306) on June 17, 2019.[1]

## I.   BACKGROUND

Thompson and seven others have been indicted for, among other things, conspiracy to distribute controlled substances. (Indictment (ECF No. 18).)  Prior to the indictment, DEA agents in Las Vegas received information that defendant Thompson was part of a conspiracy to traffic controlled substances, and an application and affidavit were submitted to obtain an order authorizing the interception of wire and electronic communication over a cellular telephone used by Thompson.  The application includes an affidavit executed by Special Agent Nestor ("Affiant").  Thompson argues that the wire taps were unnecessary, and alternatively, that a *Franks* hearing is required because materially false statements were used to obtain the warrant.

### A.   The Wiretap Application

Federal wiretaps are governed by Title III of the Omnibus Crime Control and Streets Act. *See* 18 U.S.C. §§ 2510-2520; *United States v. Sandoval*, 550 F.2d 427, 429 (9th Cir. 1976).  A

---

[1] By report and recommendation, the court initially denied the motion as untimely. (Report and Recommendation (ECF No. 291).)  The district court rejected the report and remanded for further proceedings.  (Mins. of Proceedings (ECF No. 304).)

district court may authorize a wiretap upon a showing that the wiretap is supported by both probable cause and necessity. *See United States v. Garcia-Villalba*, 585 F.3d 1223, 1227 (9th Cir. 2009). To demonstrate necessity, the application must contain:

> [A] full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) except as provided in subsection (11), a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted;

§ 2518(1)(b). Additionally, the affiant must include a full and complete statement that "other investigative procedures have been tried and failed" or are "unlikely to succeed." § 2518(1)(c). The issuing judge may approve the wiretap upon a finding that "normal procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." § 2518(3)(c). The affidavit must show that "normal investigative techniques employing a normal amount of resources have failed to make the case within a reasonable period of time." *United States v. Spagnuolo*, 549 F.2d 705, 710 (9th Cir. 1977). Wiretap evidence that the government obtains in violation of Title III must be suppressed. *See* 18 U.S.C. § 2515.

The necessity requirement is not construed as a requirement that traditional techniques are useless, but that electronic surveillance may be needed to further the investigation. *See United States v. Shyrock*, 342 F.3d 948, 976 (9th Cir. 2003). In investigations of conspiracy, the government has "considerable latitude" in wiretapping suspected members of that conspiracy. *United States v. McGuire*, 307 F.3d 1192, 1198 (9th Cir. 2002). The Ninth Circuit has recognized the difficult nature in investigating conspiracies by large complex organizations and the unknown identities of its members. *See e.g.*, *Shryock*, 342 F.3d at 976; *see also McGuire*, 307 F.3d at 1198. Further, the Ninth Circuit has continuously approved broad investigative goals in conspiracy cases. *See United States v. Canales Gomez*, 358 F.3d 1221, 1224 (9th Cir. 2004) (where the court approved a wiretap order in a conspiracy investigation where the objectives were to discover "full scope of the massive conspiracy under investigation," and to "obtain direct evidence that will

convince a jury beyond a reasonable doubt of its existence"); *see also United States v. Bennett*, 219 F.3d 1117, 1121 n. 3 (9th Cir. 2000) (noting that the Ninth Circuit has "consistently upheld similar wiretap applications seeking to discover major buyers, suppliers, and conspiracy members"); *United States v. Brone*, 792 F.2d 1504, 1505-1506 (9th Cir. 1988) (where the Ninth Circuit found that the district court did not abuse its discretion in authorizing a wiretap to "enable the agents to uncover the source of [the defendant's] narcotics or the modus operandi of the alleged conspiracy").

A search warrant is valid if supported by an affidavit establishing probable cause. *See, e.g.*, *United States v. Stanert*, 762 F.2d 775, 778 (9th Cir. 1985). An affidavit for a wiretap warrant must establish probable cause that the phone user is involved in a § 2516(1) enumerated crime, uses the phone in connection with the crime, and that calls concerning the crime will be intercepted. §§ 2518(3)(a), (3)(b), (3)(d); *see also* § 2516(1) (providing a list of enumerated crimes, including narcotics related offenses). Probable cause is assessed by the totality of the circumstances, which is a common-sense determination whether there is a "fair probability that . . . evidence of a crime will be found in a particular place." *See Illinois v. Gates*, 462 U.S. 213, 230-34 (1983).

The Ninth Circuit provides a two-step approach in reviewing wiretap orders. *United States v. Rodriguez*, 851 F.3d 931, 937 (9th Cir. 2017). First, the district court "reviews de novo whether an application for a wiretap order is supported by a full and complete statement of the facts in compliance with 18 U.S.C. § 2518(1)(c)." *United States v. Rivera*, 527 F.3d 891, 898 (9th Cir. 2008). Once the court determines that a full and complete statement was submitted, then the court reviews under an abuse of discretion standard the issuing judge's decision that there was probable cause and necessity to issue the wiretap. *See United States v. Blackmon*, 273 F.3d 1204, 1207 (9th Cir. 2001); *Brone*, 792 F.2d at 1506. "[A] district court reviewing the validity of a wiretap order must examine the application to see if it contained material misstatements or omissions regarding the necessity of the wiretap." *United States v. Caneiro*, 861 F.2d 1171, 1176 (9th Cir. 1988).

**B.      Analysis**

The court begins by conducting a review of the statements in the wiretap application and affidavit pursuant to the requirement that the affidavit must contain a full and complete statement of facts to support a necessity determination. *See* 18 U.S.C. § 2518(1)(b). Having reviewed the affidavit, the court finds that the affidavit adequately described the use of various investigative techniques, why those techniques would not achieve all of the investigation's objectives, and why other techniques would be unlikely to succeed.

Thompson asserts that the wiretap order fails to demonstrate necessity. Thompson first argues that ordinary investigative techniques were successful, and therefore the application should have been denied because the extremely invasive wiretap was unnecessary. He argues that the confidential source, whose telephonic connections were monitored by law enforcement officers, was successful in leading to a controlled purchase of drugs by an undercover officer. The use of the pen register provided ample information regarding caller identification, subscriber information, and GPS data for the target phone. Surveillance at a medical office was successful in observing a likely procurement of illegal drugs, and a trash search was successful because evidence of a digital scale used for drug transactions was discovered. Thompson views as broad and conclusory the statements made by the affiant that "[a] successful prosecution would be difficult if based mainly on information obtained from CS-1;" Affiant knows Defendant "will not disclose to CS-1 the identities of other suppliers or the roles of other members of the organization;" "Surveillance to date has been unsuccessful in identifying all members of the conspiracy;" and pen registers "will not by themselves achieve the goals of the government's investigation."

The government responds that for an investigation into a drug trafficking organization to be successful, collection of merely some evidence is insufficient. The investigation must "develop an effective case against those involved in the conspiracy. *United States v. Decoud*, 456 F.3d 996, 1007 (9th Cir. 2006) (citation omitted). An "effective case is one which proves guilt beyond a reasonable doubt, not merely evidence sufficient to secure an indictment." *United States v. Garcia-Villalba*, 585 F. 3d 1223, 1228 (9th Cir. 2009) (citation omitted).

Here, the affidavit set forth broad investigative goals for this warrant, and Thompson makes no argument that they are improperly broad. The court agrees that the traditional methods of investigation as set forth in the affidavit, although effective, did not lead to evidence of guilt beyond a reasonable doubt as all the conspirators. As described in the affidavit, the use of a pen register and physical surveillance certainly provide useful information regarding the investigation, but they do not result in an "effective case" against Thompson. Nor did the use of controlled buy, confidential source information, surveillance, and trash searches lead to the identities of all other conspirators. The court finds that the affidavit adequately explained the specific limitations of investigatory methods in this case to attain the goals of the conspiracy investigation. *See Rodriguez*, 851 F.3d at 943 ("the mere attainment of some degree of success during law enforcement's use of traditional investigative methods does not alone serve to extinguish the need for a wiretap") (citing *Bennett,* 219 F.3d at 1122); *see also United States v. Cao*, 471 F.3d 1, 3 (1st Cir. 2006) ("partial success of the investigation [does] not mean that there was nothing more to be done"). Ordinary investigative techniques were not so successful as to make a wiretap unnecessary.

Thompson also argues that the affidavit fails to provide specific circumstances why ordinary, traditional investigative methods would fail or would be too dangerous, and he criticizes the use of boilerplate language as objectionable because it lacks case specificity. The government responds that the affiant described reasons why several investigative techniques were not used.

First, the use of some boilerplate language along with case-specific language is not objectionable if there is sufficient necessity shown. *United States v. McPherson*, 2017 WL 4478335, at *10 (D. Nev. May 8, 2017). Here, the affidavit provides a list of investigative techniques that have been used or considered thus far in the investigation, but that will likely be ineffective or too dangerous. Affiant notes that the ability of the confidential source to infiltrate the drug trafficking organization is limited because he has no information about the involvement of other people in the drug trafficking organization, and does not have a sufficiently close relationship with Thompson to be able to obtain additional information, or reasonably expect that Thompson will share such information.

1    Affiant notes that a controlled purchase has been conducted, but there is a high risk of
2 danger for further controlled buys because of Thompson's criminal history, locations which
3 Thompson wishes to conduct the transactions, the known criminal history of Thompson's
4 associates.  Affiant explains the unlikelihood that a small level transaction will expose the
5 additional supply sources and co-conspirators, and the danger of the undercover agent being
6 injured when conducting a high-level transaction.

7    The affidavit explains that some physical surveillance has been successful, but that by its
8 nature, physical surveillance is not useful to investigate places outside of view.  Additionally, it
9 notes that the presence of vehicles not belonging to known residents of the various neighborhoods
10 and residences associated with this organization is conspicuous, and therefore likely to reveal the
11 investigation.  The affidavit indicates specifically that, prior to the controlled drug sale in this
12 case, Thompson had been seen walking a pit bull through the parking lot where the transaction
13 was about to be conducted, presumably trying to spot surveillance.  Additionally, the affidavit
14 describes how Thompson has been observed driving in a way intended to defeat law enforcement
15 surveillance activities.

16    The affidavit indicates that search warrants have not been sought because a previous
17 search had only yielded a small amount of drugs.  It also indicates that Thompson used multiple
18 locations to store drugs and drug trafficking information, and is reasonably believed to be
19 compartmentalizing the organization, making a search warrant likely ineffective in achieving the
20 goals of identifying additional members of the organization and the drug suppliers.

21    The affidavit notes that trash searches have been of limited success at one of Thompson's
22 residences, but Thompson sometimes lives in a large apartment complex served by a communal
23 dumpster, making it impossible to distinguish Thompson's trash.

24    The affidavit indicates that video surveillance was attempted but was unsuccessful
25 because of the apartment was located in a cellular "dead spot."   Like GPS surveillance, video
26 surveillance is of limited usefulness in uncovering the scope of the operation, for example, what
27 is happening within the various locations where Thompson is located.

28

The affidavit indicates that financial investigation was of limited success. Information showed that deposits into Thompson's accounts were made in various states, and the deposits were quickly followed by withdrawals in Nevada and California, making it likely that Thompson was shipping out of state. But the known accounts had all been closed when the affidavit was drafted.

Having determined that the application meets the requirements of § 2518(1)(c), the court employs a "common sense" approach to evaluate the reasonableness of the Government's good faith efforts to use traditional investigative tactics or its decision to forego such tactics based on the unlikelihood of their success or the probable risk of danger involved with their use. *United States v. Gonzalez, Inc.,* 412 F.3d 1102, 1112 (9th Cir. 2005). The government appropriately used ordinary investigative techniques, and demonstrated necessity for the use of the wiretap, and so the issuing judge did not abuse her authority in ordering the wiretap.

### C.     Franks Hearing

Thompson alternatively moves for a *Franks*[2] hearing to determine whether the affidavit is based upon omitted, false, or misleading statements. To obtain a *Franks* hearing, a defendant must make "a substantial preliminary showing that a false statement was deliberately or recklessly included in an affidavit submitted in support of a wiretap order, and the false statement was material to the district court's finding of necessity." *United States v. Staves*, 383 F.3d 977, 982 (9th Cir. 2004); *U.S. v. Ippolito*, 774 F.2d 1482 (9th Cir. 1985) (applying *Franks* to the showing of necessity required for a wiretap order). False statements are material "if the wiretap application purged of the false statements would not support findings of probable cause and necessity." *Id.* Immaterial falsehoods, even if made deliberately, are not fatal. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978) ("Allegations of negligence or innocent mistake are insufficient").

A material omission of information in an affidavit offered in support of an application for a wiretap may also trigger a *Franks* hearing. Where the defendant asserts an omission from the

---

[2] *Franks v. Delaware*, 438 U.S. 154 (1978).

affidavit, the inquiry is whether the inclusion of the information in the affidavit would have led to a negative finding by the issuing judge on necessity or probable cause. *See U.S. v. Chavez–Miranda*, 306 F.3d 973 (9th Cir. 2002), *cert. denied*, 123 S. Ct. 1317 (2003); *Ippolito*, 774 F.2d at 1486 n.1 (noting that the reviewing court should "insert the omitted truths" into the affidavit and determine whether necessity was shown). Thus, to prevail on a claim that the affidavit in support of the wiretap application omitted information, a defendant must show (1) that facts were omitted with the intent to make, or in reckless disregard of whether they would make, the affidavit misleading, and (2) that the affidavit, if supplemented by the omitted information, would not support a finding of necessity or probable cause.

Thompson argues that affiant's account of how surveillance fails is deficient because it only contains generalized statements true of any narcotics investigation, which is that it is limited and conspicuous, making prolonged surveillance all but impossible, and that it fails to account for a successful surveillance conducted on April 11, 2016. Second, he argues that the statement that the confidential informant is merely an associate of the criminal enterprise, that he has no knowledge of the inner-working of the enterprise, or that he would not be able to obtain that information fails to provide any specific facts as to why confidential sources would fail or be too dangerous. The government responds that Thompson fails to identify any false statements, and identifies only one omission, which is not material to a finding of necessity. The government explains that the omission related to surveillance conducted on April 11, 2016 when agents followed Thompson when he drove two associates to a chiropractic clinic to procure drugs.

The court has reviewed the parties' arguments and the affidavit and finds that Thompson has not identified a false statement regarding surveillance or the confidential informant. The omission which said that Thompson was surveilled on April 11, 2016, is not material because even if the statement was added to the affidavit, it would not impact the ultimate decision regarding the necessity of the wiretap order. Thompson makes no argument as to how the statement would make a difference. Accordingly, because no false statements or material omissions are identified, a *Franks* hearing is unnecessary.

## II. RECOMMENDATION

IT IS THEREFORE RECOMMENDED that Thompson's motion to suppress (ECF No. 289) be DENIED.

## III. NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: June 25, 2019

C.W. HOFFMAN, JR.
UNITED STATES MAGISTRATE JUDGE