# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> DEVIN THOMPSON, ) <br> ) <br> Defendant. ) <br> ) | Case No.: 2:16-cr-00230-GMN-CWH <br><br> **ORDER** |

Pending before the Court is the Report and Recommendation ("R&R") of the Honorable United States Magistrate Judge Carl W. Hoffman, (ECF No. 308). Defendant Devin Thompson ("Defendant") filed an Objection, (ECF No. 311), and the Government filed a Response, (ECF No. 312). For the reasons discussed below, the Court accepts and adopts in full Judge Hoffman's R&R to the extent that it is not inconsistent with this Order.

# I. BACKGROUND

This case arises out of an investigation by the Drug Enforcement Agency ("DEA") into drug trafficking activities in 2016. As part of that investigation, on April 25, 2016, Special Agent Shane Nestor of the DEA submitted to the Court an application for a wiretap (the "Application"). The purpose of the wiretap was to intercept Defendant's wire and electronic communication through a cellular telephone "concerning offenses involving violations of . . . conspiracy to distribute controlled substances . . . distribution of controlled substances . . . and unlawful use of communication facilities to facilitate the commission of drug felonies." (Aff. 2:15–3:2, 3:3–7, 43:7–14, Ex. A to Mot. Suppress, ECF No. 289-1). Attached alongside that Application was an Affidavit by Special Agent Nestor, which detailed the supporting reasons for the wiretap in light of facts and circumstances discovered throughout the investigation into Defendant. (*Id.*). The Affidavit discussed various investigatory methods utilized prior to the

wiretap Application, which had "been tried and have failed to fully achieve the goals and objectives of [the] investigation." (*Id.* 22:8–11). Those prior methods included the use of a confidential source and undercover officer, controlled drug purchases, physical surveillance, toll records, a pen register, trash searches, forms of GPS location monitoring, and investigations into Defendant's finances. (*Id.* 9:11–41:15). The Affidavit also explained how certain investigatory methods—such as search warrants, video surveillance, interviews of associated persons, grand jury subpoenas, immunity, and mail covers—would not effectively accomplish the goals of the investigation. (*Id.* 30:13–34:6, 35:19–40:10).

Based on the Affidavit's information, the Court approved the wiretap on April 26, 2016. (*Id.* 43:10–14). Defendant was later charged with Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846, Distribution of a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and (iii), and Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Indictment, ECF No. 18); (Second Superseding Indictment, ECF No. 214).

On April 23, 2019, Defendant filed a Motion to Suppress Evidence, (ECF No. 298), challenging the Court's issuance of the April 26, 2016 wiretap against him. In that Motion, Defendant argued for the suppression of "all evidence obtained as a result of communications that were intercepted, with court authority, by law enforcement." (Mot. Suppress 1:20–22, ECF No. 289).[1] On June 25, 2019, Judge Hoffman filed the R&R, (ECF No. 308), recommending denial of Defendant's Motion, to which Defendant timely filed the Objection, (ECF No. 311).

---

[1] Judge Hoffman initially recommended that the Court deny Defendant's Motion, (ECF No. 289), as untimely because it was filed after the deadline for pre-trial motions and merely weeks before trial. (R&R, ECF No. 291). However, after Judge Hoffman made that recommendation, the parties stipulated to extend several deadlines in this case, including the trial date. The Court accordingly rejected Judge Hoffman's recommendation of denial, set a briefing schedule, and remanded the Motion to Judge Hoffman. (Mins. Proceedings, ECF No. 304).

## II. LEGAL STANDARD

A party may file specific written objections to the findings and recommendations of a United States Magistrate Judge made pursuant to Local Rule IB 1–4. 28 U.S.C. § 636(b)(1)(B); D. Nev. Local R. IB 3-2. Upon the filing of such objections, the Court must make a *de novo* determination of those portions of the Report to which objections are made. The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); D. Nev. Local R. IB 3-2(b).

## III. DISCUSSION

In the instant Objection, Defendant argues that the R&R incorrectly analyzed the "necessity" requirement for the wiretap and failed to recognize certain misrepresentations and omissions in the Affidavit supporting the Application. (Obj. 4:6–8:16, ECF No. 311). Defendant accordingly argues that, under the applicable legal standards, "the Application should have been denied, and all evidence obtained as a result of the order granting the wiretap should be suppressed." (*Id.* 3:28–4:4).

### A. Full and Complete Statement

To evaluate the sufficiency of the wiretap Application, the Court must first evaluate whether the supporting Affidavit contains "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). In order to satisfy this standard, the Affidavit must explain the failure of alternative investigative techniques in "case-specific" detail. *United States v. Rivera*, 527 F.3d 891, 899–90 (9th Cir. 2008).

The R&R found that the Affidavit satisfied the requirements of 18 U.S.C. § 2518(1)(c) because it adequately "described the use of various investigative techniques, why those techniques would not achieve all of the investigation's objectives, and why other techniques would be unlikely to succeed." (R&R 4:2–7, 5:1–7:12, ECF No. 308). Defendant objects to the

R&R by arguing that the Affidavit failed to "provide any reason or analysis as to why further investigation was not employed" before seeking the wiretap, and that the R&R failed to recognize this deficiency. (Obj. 5:5–8). Defendant also points to several broad statements made in the Affidavit about the inherent risks or limitations of certain investigatory techniques, and he contends that, without providing case-specific facts as to why traditional investigatory techniques were insufficient, the Affidavit did not "rise to the level of necessity . . . to overcome the presumption against wiretaps." (*Id.* 5:18–22).

Upon *de novo* review of the 43-page Affidavit, the Court finds that the Affidavit provided a "full and complete statement" for purposes of 18 U.S.C. § 2518(1)(c) by explaining through case-specific facts why further investigatory measures were not employed and how "necessity" justified the wiretap. Beginning with the investigatory methods used prior to the wiretap Application, the Affidavit first discussed the use of a Confidential Source ("CS-1") and an Undercover Officer ("UC"). Though the CS-1 and UC achieved initial success through controlled drug purchases with Defendant, (Aff. 9:18–10:11, Ex. A to Mot. Suppress, ECF No. 289-1), the Affidavit goes on to provide facts as to how such measures could not accomplish the objectives of the investigation. (*Id*. 21:10–22:7) (listing objectives such as: "discovering the full scope and identification of key personnel involved in illegal drug trafficking on behalf of [Defendant]," and learning "the identities and roles of all suppliers of pharmaceutical narcotic controlled substances and identified conspirators"). Specifically, the Affidavit explained how: Defendant maintained only an "associate relationship" with CS-1 and UC, meaning that the CS-1 and UC would not be effective in identifying members of the conspiracy due to Defendant's lack of trust; trust with Defendant would potentially take years to build; Defendant's interest in selling narcotics out of state attributed to his unwillingness "to deal with the UC" unless it was on his own terms; the controlled buys could not reveal out-of-state participants; and furtherance of controlled buys under the circumstances of the case would put

an undercover officer in unnecessarily dangerous situations. (*Id.* 23:8–27:16). These case-specific explanations illustrated the inability of the CS-1 and UC to develop an effective case against Defendant and those involved in the conspiracy. As other courts have consistently found, the limited success of this investigative method does not negate the necessity of a court-authorized wiretap based on the facts and circumstances, nor does the limited success require law enforcement officials to completely exhaust this investigative method before they sought the wiretap. *See United States v. Canales Gomez*, 358 F.3d 1221, 1225 (9th Cir. 2004).

The Affidavit further supported necessity by discussing how other methods used during the investigation were, and would continue to be, ultimately ineffective. For example, physical surveillance proved ineffective because of Defendant's evasive measures throughout the investigation, because of constraints due to Defendant's locations, and because of surveillance's inability to reveal the reach of the conspiracy and distribution network at the center of the investigation. (*Id.* 27:17–30:12, 34:7–35:17, 35:20–38:4, 40:11–41:15) (explaining the ineffectiveness with attempted methods of physical surveillance, a pen register, trash searches, and a financial investigation). The Affidavit also sufficiently explained the ineffectiveness of other ordinary techniques considered during the investigation, such as interviews, mail cover requests, grand jury subpoenas, and immunity, based on facts uncovered during the investigation. (*Id.* 32:17–34:6).

As a result, the Affidavit properly established how previously used or considered investigatory methods would neither suffice to accomplish the investigation's purposes nor build a case to dismantle the targeted drug trafficking organization. The Affidavit thus satisfied the requirements of § 2518(1)(c) by showing why traditional investigative methods would prove ineffective and need not be further exhausted before seeking the wiretap. *See Rodriguez*, 851 F.3d at 943 (explaining how law enforcement officers need not "exhaust every conceivable alternative before obtaining the wiretap"). Additionally, while certain provisions within the

Affidavit discussed generalized, inherent limitations of investigatory techniques, such provisions are not fatal to the wiretap Application in light of the case-specific, factual discussions supporting necessity. *See United States v. Torres*, 908 F.2d 1417, 1423 (9th Cir. 1990) ("The presence of conclusory language in the affidavit will not negate a finding of necessity if the affidavit, as a whole, alleges sufficient facts demonstrating necessity.").

**B. Necessity**

Because the Court finds that the wiretap Application contained a "full and complete statement" to satisfy 18 U.S.C. § 2518(1)(c), the Court's analysis continues to a review of the issuing decision's finding that a wiretap was necessary pursuant to § 2518(3)(c). *Canales Gomez*, 358 F.3d at 1225. The Court operates under an abuse of discretion standard when reviewing the issuing judge's finding of necessity. *United States v. Rodriguez*, 851 F.3d 931, 938 (9th Cir. 2017). Moreover, in this review, the Court uses "a common sense approach to evaluate the reasonableness of the government's good faith efforts to use traditional investigative tactics or its decision to forego such tactics based on the unlikelihood of their success." *Id.* at 944 (quotations omitted).

The purpose of this review for necessity "is to ensure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Blackmon*, 273 F.3d 1204, 1207 (9th Cir. 2001). In other words, "[t]he necessity requirement can be satisfied by a showing in the application that ordinary investigative procedures, employed in good faith, would likely be ineffective in the particular case." *United States v. Garcia-Villalba*, 585 F.3d 1223, 1228 (9th Cir. 2009). "The necessity for the wiretap is evaluated in light of the government's need not merely to collect some evidence, but to develop an effective case against those involved in the conspiracy." *Id.* (quoting *United States v. Decoud*, 456 F.3d 996, 1007 (9th Cir. 2006)). "An 'effective case'

means 'evidence of guilt beyond a reasonable doubt, not merely evidence sufficient to secure an indictment.'" *Id.* (citing *United States v. McGuire*, 307 F.3d 1192, 1198 (9th Cir. 2002)).

The Affidavit here showed that the government used a range of traditional techniques—for months leading up to the wiretap Application—which demonstrated an unlikeliness to lead to information supporting a conviction without a wiretap. (Aff. 10:13–11:3, Ex. A to Mot. Suppress) (showing the investigation beginning in February of 2016). As previously discussed, though the investigation achieved limited success with some investigatory methods, the Affidavit explained through case-specific detail how such methods could not accomplish the overarching goals of the investigation, could not provide evidence to build an effective case against Defendant and those involved in the conspiracy, and had exhausted their usefulness. *See Canales Gomez*, 358 F.3d at 1226. The Affidavit's discussions as to why other considered investigative techniques would be ineffective, including methods of interviews, mail cover requests, grand jury subpoenas, and immunity, similarly supported a finding of necessity for the wiretap. (*Id.* 32:17–34:6).

Altogether, the Affidavit properly discussed the various investigative techniques used before seeking the wiretap, and provided sufficient case-specific explanations as to how traditional investigative techniques had either exhausted their ability to build an effective case or seemed unlikely to lead to information supporting a conviction. *See id.* ("This court consistently upheld findings of necessity where traditional investigative techniques lead only to apprehension and prosecution of the main conspirators, but not to the apprehension and prosecution of . . . other satellite conspirators.") (citations and quotations omitted). The Court accordingly concludes, as did the R&R, that it was not an abuse of discretion by the issuing decision to find that the Affidavit justified the wiretap, especially in light of the deferential standard of review for investigations of a conspiracy. *United States v. Rodriguez*, 851 F.3d 931, 944 (9th Cir. 2017) ("We have always accorded the issuing judge 'considerable discretion in

finding necessity, particularly when the case involves the investigation of a conspiracy.'")
(quoting *United States v. Reed*, 575 F.3d 900, 909 (9th Cir. 2009)); (R&R 7:6–12).

**C. *Franks* Hearing**

Defendant argues that the Court should hold a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), because the Affidavit contains "material misstatements and omissions . . . which, once removed, leaves only generalized statements" that fail to meet the "full and complete" statement requirement for a wiretap. (Obj. 7:17–8:5). To warrant a *Franks* hearing based on a claimed false statement, Defendant must make a "substantial preliminary showing" that the false statement was deliberately or recklessly included in the Affidavit submitted in support of the wiretap order, and "the false statement was material to the district court's finding of necessity." *United States v. Staves*, 383 F.3d 977, 982 (9th Cir. 2004). False statements are "material" if the wiretap application "purged of the false statements would not support findings of probable cause and necessity." *Id.* Likewise, to trigger a *Franks* hearing based on an omission, the inquiry is whether the omitted information is "material," in that inclusion of the omitted information in the Affidavit would have led to a negative finding of probable cause by the issuing judge. *United States v. Collins*, 61 F.3d 1379, 1384 (9th Cir. 1995).

Defendant attempts to satisfy his burden to warrant a *Franks* hearing by first arguing that the Affidavit misrepresented facts when it stated, "surveillance is 'limited' and conspicuous making 'prolonged surveillance all but impossible.'" (Mot. Suppress 7:18–21, ECF No. 289). Defendant does not, however, explain how this statement was false or contrary to facts in the investigation. Indeed, the Affidavit explains in case-specific facts how surveillance was limited due to the area in which Defendant lived, Defendant's prior acts of scoping out cars by "paying particular attention to police vehicles that had not been previously parked in the parking lot [of Defendant's apartment complex] before," and how Defendant "often" would use evasive measures to "defeat law enforcement surveillance activities." (Aff.

28:5–30:12). Further, while the Affidavit stated how the investigation and surveillance had previously revealed "several criminal associates," the Affidavit continued with specific facts of how investigatory methods other than a wiretap would be ineffective in accomplishing the goals of the investigation due to the interstate reach of the narcotics trafficking and the inability to identify out-of-state persons. (*Id.* 18:15–21, 21:12–22:7, 23:7–21, 26:16–27:16, 38:7–22). Altogether, Defendant has not satisfied his burden to show a deliberate or reckless false statement, and has not shown how the above-mentioned statement in the Affidavit fails to properly lend support for a finding of probable cause and necessity.

Related to Defendant's argument concerning misrepresentations, Defendant contends that the Affidavit omitted facts of a "successful surveillance" as stated in a Report by the DEA. According to that Report, a DEA officer surveilled Defendant on April 11, 2016, by following him and two other individuals to "Gettinger Chiropractic." (Report of Investigation at 2, Ex. B. to Mot. Suppress, ECF No. 289-2). Though the Affidavit generally discloses the April 11, 2016 surveillance, Defendant argues that the Affidavit improperly failed to mention how he visited Gettinger Chiropractic with two other individuals. (Mot. Suppress 5:27–6:1, 7:16–26, ECF No. 289); (Aff. 29:3–18, 37:4–7, Ex. A. to Mot. Suppress) (noting that on April 11, 2016, Defendant met with "two unidentified black males," and detailing Defendant's evasive maneuvers during that surveillance activity). According to Defendant, those omitted facts are "material" because they show how prior surveillance procedures revealed his potential source of prescription medications and associated individuals. (*Id.*).

The Court, however, does not find that the omission of facts about this surveillance activity created a "material" difference. These facts do not show how the April 11, 2016 surveillance substantially assisted in revealing the extent of the conspiracy or identities and roles of those involved in the interstate conspiracy. Nor do these facts contradict the Affidavit's explanation about the critical shortfalls of physical surveillance in this case, which

the Affidavit stated would continue and ultimately prevent an effective investigation. (Aff. 27:17–30:12, Ex. A. to Mot. Suppress) (detailing Defendant's skill in hindering surveillance and how surveillance would not "dismantle [Defendant's] drug trafficking organization" or help identify "members of the conspiracy . . . the location and identity of the illegal narcotics proceeds generated by the operation . . . additional narcotics suppliers . . . and possible locations of contraband."); *see United States v. Garcia–Villalba*, 585 F.3d 1223, 1230 (9th Cir. 2009). The Court, therefore, concludes that Judge Hoffman appropriately found the omission to not warrant a *Franks* hearing or suppression of evidence.

Similarly lacking merit to warrant a *Franks* hearing are Defendant's arguments that the Affidavit improperly relied on generalizations about deficiencies with investigative methods. (Mot. Suppress 7:16–26, ECF No. 289); (Obj. 7:28–8:11). As explained above, the Affidavit provided ample case-specific factual statements to support the requirements for wiretap, and it did not rely on conclusory generalizations. Moreover, in contrast to Defendant's argument, this case is not similar to *United States v. Blackmon*, 273 F.3d 1204 (9th Cir. 2001), where the circuit dealt with multiple factual misstatements in an affidavit for a wiretap application, which, once purged, left only insufficient boilerplate assertions that "would be true of most if not all narcotics investigations." *Id.* at 1207, 1210.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Report and Recommendation, (ECF No. 308), is **ACCEPTED and ADOPTED in full**, to the extent that it is not inconsistent with this Order.

**IT IS FURTHER ORDERED** that the Defendant's Motion to Suppress Evidence, (ECF No. 289), is **DENIED**.

**DATED** this __31__ day of July, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Court